## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **THOMAS EDWARD BARNARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 18-cv-431-CVE-FHM** |
| **v.** | ) | |
| | ) | **Removed from the District Court** |
| **BANK OF AMERICA, N.A.,** *et al.,* | ) | **for Tulsa County, OK** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DEFENDANT BANK OF AMERICA, N.A.,'S
## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
## <u>AMENDED COUNTERCLAIM AND THIRD-PARTY PETITION</u>

Dated:   August 23, 2018

Respectfully submitted,

*/s/ Brian Rayment*
Brian J. Rayment (Fed. Bar #7441)
**KIVELL, RAYMENT AND FRANCIS**
Triad Center I, Suite 550
7666 East 61st Street
Tulsa, Oklahoma 74133
Telephone: (918) 254-0626
Facsimile: (918) 254-7048
E-mail: brayment@kivell.com

***Counsel for Defendant Bank of America, N.A.***

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................1

FACTUAL BACKGROUND ........................................................................................1

STANDARD OF REVIEW ...........................................................................................4

ARGUMENT ..................................................................................................................5

I.    THE COURT MUST DISMISS BARNARD'S BREACH OF CONTRACT CLAIM (COUNT I) AGAINST BANA BECAUSE BARNARD FAILS TO PLEAD THE REQUISITE ELEMENTS. .......................................................... 5

II.   THE COURT MUST DISMISS BARNARD'S CLAIM FOR "BAD FAITH CONDUCT" (COUNT II) AGAINST BANA BECAUSE THAT TORT DOES NOT EXTEND TO COMMERCIAL LOANS............................................................ 8

III.  THE COURT MUST DISMISS BARNARD'S ABUSE OF PROCESS CLAIM (COUNT III) AGAINST BANA BECAUSE BARNARD HAS FAILED TO ALLEGE FACTS THAT COULD SUPPORT SUCH A CLAIM. ................................ 10

IV.  THE COURT MUST DISMISS BARNARD'S FDCPA CLAIM AGAINST BANA BECAUSE BANA IS NOT A DEBT COLLECTOR AND THEREFORE NOT SUBJECT TO THE STATUTE.............................................................. 14

V.   COUNT V, SLANDER OF TITLE, MUST BE DISMISSED AS TO BANA BECAUSE THE FILING OF THE LIS PENDENS WAS ABSOLUTELY PRIVILEGED. ...................................................................................... 17

VI.  COUNT VI, "PUNITIVE DAMAGES," MUST BE DISMISSED AS TO BANA BECAUSE IT IS NOT AN INDEPENDENT CAUSE OF ACTION............................. 19

CONCLUSION.................................................................................................... 21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Armstrong v. JPMorgan Chase Bank Nat. Ass'n*,
633 F. App'x 909 (10th Cir. 2015) ...................................................................................2

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................5

*Barnes v. W. Express, Inc.*,
No. CIV-14-574-R, 2015 WL 11237487 (W.D. Okla. Aug. 31, 2015) ...................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................4, 5, 12

*Braun v. Bank of Am.*,
No. CV 17-72-BU-BMM-JCL, 2017 WL 6806790 (D. Mont. Nov. 30, 2017),
*report and recommendation adopted*, No. CV 17-72-BU-BMM, 2018 WL
298550 (D. Mont. Jan. 4, 2018), *appeal dismissed*, No. 18-35016, 2018 WL
1704219 (9th Cir. Mar. 15, 2018) .................................................................................15

*Chapman v. Chase Manhattan Mortg. Corp.*,
No. 04-CV-0859-CVE-FHM, 2007 WL 2815246 (N.D. Okla. Sept. 24, 2007) .......................8

*DCR Fund I, LLC v. TS Family Ltd. P'ship*,
261 F. App'x 139 (10th Cir. 2008) ................................................................................7

*Hertz v. Luzenac Group*,
576 F.3d 1103 (10th Cir.2009) ....................................................................................11

*Hitch Enterprises, Inc. v. Cimarex Energy Co.*,
859 F. Supp. 2d 1249 (W.D. Okla. 2012) ................................................................8, 9, 10

*Houck v. Local Fed. Sav. & Loan, Inc.*,
996 F.2d 311 (10th Cir. 1993) ....................................................................................15

*Kaltenbach v. Richards*,
464 F.3d 524 (5th Cir. 2006) ......................................................................................17

*Kruse v. Travelers Home & Marine Ins. Co.*,
No. 15-CV-0444-CVE-FHM, 2015 WL 5599931 (N.D. Okla. Sept. 22, 2015) ...............19, 20

*Ladouceur v. Wells Fargo*,
682 F. App'x 649 (10th Cir. 2017) ..............................................................................16

*Malcom v. Wells Fargo Bank, N.A.*,
No. CIV-13-0754-HE, 2014 WL 5780712 (W.D. Okla. Nov. 5, 2014) ...........................12, 13

*Massey v. Matrix Serv. Co.*,
No. 12-CV-546-GKF-PJC, 2013 WL 5603805 (N.D. Okla. Oct. 11, 2013) ...........................6

*McDaniel v. S. & Assocs., P.C.*,
325 F. Supp. 2d 1210 (D. Kan. 2004) ..................................................................................17

*McGregor v. Nat'l Steak Processors, Inc.*,
No. 11-CV-0570-CVE-TLW, 2012 WL 2904547 (N.D. Okla. July 16, 2012) ........................5

*McGregor v. Nat'l Steak Processors, Inc.*,
No. 11-CV-0570-CVE-TLW, 2012 WL 314059 (N.D. Okla. Feb. 1, 2012)...........................9

*Meyers v. Kruger*,
759 F. Supp. 770 (E.D. Okla. 1990), *aff'd*, 930 F.2d 34 (10th Cir. 1991).......................11, 12

*Monroe v. Bank of Am. Corp.*,
No. 17-CV-248-JED-JFJ, 2018 WL 1875294 (N.D. Okla. Apr. 19, 2018).....................17, 18

*Morecraft v. Farmers Ins. Co.*,
No. 09-CV-175-TCK-FHM, 2012 WL 1081178 (N.D. Okla. Mar. 30, 2012) ........................6

*Obduskey v. Wells Fargo*,
879 F.3d 1216, 1219 (10th Cir.), *cert. granted sub nom. Obduskey v.*
*McCarthy & Holthus LLP*, 138 S. Ct. 2710 (2018) ...............................................................16

*Pierce v. Gilchrist*,
359 F.3d 1279 (10th Cir.2004) ...........................................................................................13

*Pinson v. Equifax Credit Info. Servs., Inc.*,
No. 06-CV-162-GKF-SAJ, 2008 WL 906241 (N.D. Okla. Mar. 31, 2008),
*aff'd*, 316 F. App'x 744 (10th Cir. 2009)...............................................................................20

*Powell v. Express Credit Auto, Inc.*,
No. CIV-14-1167-R, 2015 WL 1642137 (W.D. Okla. Apr. 13, 2015)...................................20

*Ramsey v. Bank of Oklahoma*,
No. 08-CV-0239-CVE-SAJ, 2008 WL 4936316 (N.D. Okla. Nov. 17, 2008)........................7

*Raymond v. Air Evac EMS, Inc.*,
No. 14-CV-0680-CVE-PJC, 2015 WL 1738026 (N.D. Okla. Apr. 16, 2015)........................20

*Ridge at Red Hawk, LLC v. Shneider*,
493 F.3d 1174 (10th Cir. 2007) .............................................................................................5

*Risener v. Bank of Am. Corp.*,
No. CIV-10-1110-R, 2011 WL 13101733 (W.D. Okla. Oct. 13, 2011) ...........................14, 15

*Ruffin v. State Farm Fire & Cas. Co.*,
No. CIV-14-1071-F, 2014 WL 12730326 (W.D. Okla. Dec. 16, 2014)...................................6

*Salmon v. Nutra Pharma Corp.*,
687 Fed. Appx. 713 (10th Cir. 2017)...................................................................................12

*Satterfield v. City of Tulsa*,
No. 06-CV-0501-CVE-PJC, 2008 WL 111981 (N.D. Okla. Jan. 8, 2008)..............................2

*Scoles v. Spellings*,
No. CIV-07-1007-M, 2008 WL 974702 (W.D. Okla. Apr. 8, 2008).......................................15

*Solomon v. HSBC Mortg. Corp.*,
No. CIV-09-200-C, 2009 WL 2579803 (W.D. Okla. Aug. 18, 2009)....................................14

*Soseeah v. Sentry Ins.*,
808 F.3d 800 (10th Cir. 2015) ..............................................................................................6

*Utah Gospel Mission v. Salt Lake City Corp.*,
425 F.3d 1249 (10th Cir. 2005) .............................................................................................2

*Warren v. Countrywide Home Loans, Inc.*,
342 F. App'x 458 (11th Cir. 2009) ..................................................................................16, 17

*Warrenfeltz v. Hogan Assessment Sys., Inc.*,
No. 17-CV-428-GKF-FHM, 2018 WL 1546559 (N.D. Okla. Mar. 29, 2018) .........................9

**State Cases**

*Albertson v. Raboff*,
295 P.2d 405 (Cal. 1956) .....................................................................................................18

*Beshara v. S. Nat. Bank*
928 P.2d 280 (Okla. 1996)...............................................................................................9, 10

*Borison v. Bank Leumi Tr. Co. of New York*,
972 P.2d 1188 (Okla. Civ. App. 1998) ...........................................................................17, 18

*Cates v. Integris Health, Inc.*,
412 P.3d 98 (Okla. 2018), *cert. denied*, 138 S. Ct. 2659 (2018) ........................................5

*Dewberry v. Universal C.I.T. Credit Corp.*,
415 P.2d 978 (Ok. 1966).......................................................................................................7

*Embry v. Innovative Aftermarket Sys. L.P.*,
247 P.3d 1158 ......................................................................................................................8

iv

*Grasz v. Discover Bank ex rel. SA Discover Fin. Servs., Inc.,*
    315 P.3d 406 (Okla. Civ. App. 2013) ....................................................17

*McGinnity v. Kirk,*
    362 P.3d 186 (Okla. 2015) ...........................................................11, 12

*Morford v. Eberly & Meade, Inc.,*
    879 P.2d 841 (Okla. Civ. App. 1994) ...............................................18, 19

*RJB Gas Pipeline Co. v. Colorado Interstate Gas Co.,*
    813 P.2d 1 (Okla. Civ. App. 1989) .......................................................8

*Rodgers v. Tecumseh Bank,*
    756 P.2d 1223 (Okla. 1988) .......................................................8, 9, 10

*Scott-Kinnear, Inc. v. Eberly & Meade, Inc.,*
    879 P.2d 838 (Okla. Civ. App. 1994) ...............................................18, 19

*Voiles v. Santa Fe Minerals, Inc.,*
    911 P.2d 1205 (Okla. 1996) .............................................................19

*Watkins v. Grady County Soil and Water Conserv. Dist.,*
    438 P.2d 491 (Okla. 1968) ...............................................................6

*Wilspec Techs., Inc. v. Dunan Holding Grp., Co.,*
    204 P.3d 69 (Okla. 2009) ...............................................................21

## Federal Statutes

15 U.S.C. § 1692 *et seq.* .....................................................................4

15 U.S.C. § 1692a ........................................................................14, 15

15 U.S.C. § 1692d ........................................................................14, 16

15 U.S.C. § 1692e ........................................................................14, 16

15 U.S.C. § 1692f ........................................................................14, 16

## State Statutes

Okla. Stat. Title 15, § 140 ....................................................................7

## Rules

Fed. R. Civ. P.
    Rule 11(b) ..............................................................................12
    Rule 12(b)(6) .........................................................................1, 4

**Other Authorities**

Federal Trade Commission, https://www.consumer.ftc.gov/articles/pdf-0036-
      debt-collection.pdf (last visited August 15, 2018)...................................................................15

Defendant Bank of America, N.A., ("BANA") by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), hereby submits this Memorandum of Law in Support of its Motion to Dismiss the Amended Counterclaim and Third-Party Petition ("Amended Petition") filed by Plaintiff Thomas Edward Barnard ("Barnard"), and for cause states as follows:

## INTRODUCTION

Barnard's Amended Petition exemplifies the type of threadbare pleading proscribed by *Iqbal* and *Twombly*. Instead of relying on ***facts***, Barnard levels one conclusory allegation after another, simply parroting the elements of each asserted cause of action. As a result, each of the six counts on the Amended Petition must be dismissed for failure to state a claim. First, Barnard failed to either plead the existence of a valid contract or any facts demonstrating any breach occurred. Second, the tort of "bad faith conduct" fails as a matter of law because it does not extend to the commercial lending context. Third, Barnard did not, and cannot, plead facts supporting the requisite elements of abuse of process. Fourth, BANA is not a "debt collector" as defined by the Fair Debt Collection Practices Act. Fifth, absolute privilege bars Barnard's slander of title claim. Finally, although styled as an independent cause of action, "punitive damages" is – as the name suggests – simply a form of damages and not a claim. Moreover, Barnard fails to allege facts establishing malice or reckless disregard which are required to support punitive damages. Thus, and as more fully explained below, the Court must dismiss the Amended Petition as to BANA.

## FACTUAL BACKGROUND[1]

On June 17, 2002, Barnard and his then wife, Deborah Barnard, purchased real property with a mailing address of 7711 East 101st Place, Tulsa, Oklahoma (the "Property").[2] *See* Am. Pet.,

---

[1] The factual allegations in the Amended Counterclaim are taken as true for purposes of this Motion only.

[2] Although the Amended Petition states that the Property is located at "7711 East 101st Place", the physical address of the Property is 8711 East 101st Place, Tulsa, Oklahoma. *See infra* **Exhibits** 1-6, 8.

¶ 4. This purchase was financed by a mortgage on the Property between the Barnards and First Nationwide Mortgage Corporation. *See* Mortgage dated June 17, 2002, a true and correct copy of which is attached hereto as **Exhibit 1**.[3] The Barnards later refinanced their initial mortgage and executed a new mortgage with Mortgage Capital Associates, Inc. on December 16, 2004 in the amount of $253,000.00 (the "Mortgage"). *See* Mortgage dated December 16, 2004, a true and correct copy of which is attached hereto as **Exhibit 2**. The Barnards' initial mortgage with First Nationwide Mortgage Corporation was released the following month. *See* Release of Mortgage dated January 14, 2005, a true and correct copy of which is attached hereto as **Exhibit 3**.

The Barnards divorced in June 2007, and Mrs. Barnard thereafter executed a quitclaim deed conveying all interest in the Property to Mr. Barnard. *See* Quit Claim Deed dated June 7, 2007, a true and correct copy of which is attached hereto as **Exhibit 4**.

On or around 2008, Barnard experienced financial difficulties, eventually filing for bankruptcy. *See* Am. Pet., ¶¶ 9-10. On November 9, 2011, the Mortgage was assigned by Mortgage Capital Associates, Inc. to BANA. *See* Assignment of Mortgage dated November 9, 2011, a true and correct copy of which is attached hereto as **Exhibit 5**. In order to help Barnard keep his Property, BANA, as the servicer, offered Barnard a permanent loan modification under the Home Affordable Modification Program ("HAMP"), which required Barnard to make payments under a Trial Payment Plan ("TPP"). *See* Am. Pet., ¶ 11. After making his payments

---

[3] This Court's consideration of documents referenced in the Amended Petition or in the public land records for Tulsa County, Oklahoma does not convert this Motion into a motion for summary judgment. *See Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005) ("We have recognized however, that a document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute." (citation omitted)); *Armstrong v. JPMorgan Chase Bank Nat. Ass'n*, 633 F. App'x 909, 911 (10th Cir. 2015) ("A court may consider facts subject to judicial notice—including facts that are a matter of public record, such as documents filed in other litigation—without converting a motion to dismiss into a motion for summary judgment" (citation omitted)); *Satterfield v. City of Tulsa*, No. 06-CV-0501-CVE-PJC, 2008 WL 111981, at *2 n.1 (N.D. Okla. Jan. 8, 2008) (holding that court could take judicial notice of land deeds outside the pleadings because they were public records).

pursuant to the TPP, Barnard executed a permanent Home Loan Modification Agreement with BANA on May 21, 2011.  *See* Home Loan Modification Agreement, a true and correct copy of which is attached hereto as **Exhibit 6**.  By January 1, 2013, however, Barnard fell behind on his monthly mortgage payments.  *See* Foreclosure Petition dated June 8, 2015, ¶ 7, a true and correct copy of which is attached hereto as **Exhibit 7**.

In 2014, BANA attempted to work with Barnard on a second permanent loan modification.  *See* Am. Pet., ¶ 14.  The Amended Petition alleges that Barnard "was once again approved for a TPP under the Fannie Mae Standard Modification Program," *Id*., ¶ 14, and that he "successfully made the TPP payments and was approved for a permanent modification."  *Id*., ¶ 15.  However, as specifically admitted by Plaintiff, BANA's business records do not corroborate this allegation.  *See id*., ¶ 16 ("BANA claims that Barnard declined the permanent modification process over a telephone call with its associate on May 6, 2014.  As a result, BANA sent a declination letter regarding the permanent modification to Barnard.").  Moreover, Barnard fails to assert that any *written and signed* 2014 permanent loan modification exists, instead asserting that his loan was *orally* modified under the Fannie Mae program during a telephone conversation in which a BANA "associate agreed to reduce the payments of $1,939.75 to $1433.11 due to Barnard's new employment where he resided during the week in Oklahoma City for work and in the [sic] residence in Tulsa on weekends."  *Id*., ¶ 17.

On April 18, 2015, BANA assigned the Mortgage on the Property to the Federal National Mortgage Association ("Fannie Mae").  *See* Assignment of Mortgage dated April 18, 2015, a true and correct copy of which is attached hereto as **Exhibit 8**.  This Assignment was recorded in the Land Records for Tulsa County on May 1, 2015.  *Id*.  On March 11, 2015, BANA released the servicing of the loan to Seterus.  Am. Pet., ¶ 23.

3

Notwithstanding the assignment of the Mortgage to Fannie Mae and the servicing transfer to Seterus, a Foreclosure Petition was erroneously filed in BANA's name on June 8, 2015. *See* Am. Pet., ¶ 25. The law firm that filed the Foreclosure Petition is Baer & Timberlake, P.C. *Id*., ¶ 25. Baer & Timberlake filed a *lis pendens* in the Land Records concurrently with the filing of the Amended Petition. *Id*., ¶ 26. At the time that the Foreclosure Petition was filed, Barnard was in arrears and his mortgage payment for January 1, 2013 and thereafter had not been paid. **Exhibit 7**, ¶ 7. According to the Amended Petition, "Seterus and Baer Timberlake knew that BANA was not a party in real interest to the instant litigation, but yet represented to the Court and Barnard that BANA was the proper party to assert a claim for foreclosure." Am. Pet., ¶ 28.

The foreclosure, however, was never completed. *See id*., ¶ 29. In fact, Seterus approved Barnard for a load modification. *Id*. Barnard asserts that he is current on his loan with his new servicer, Caliber Home Loans, Inc. *Id*.

On August 3, 2018, Barnard filed the instant Amended Petition, alleging six causes of action: (1) Breach of Contract as to Bank of America and Seterus, (2) Bad Faith Conduct as to Bank of America and Seterus, (3) Abuse of Process against all Defendants, (4) Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") against all Defendants, (5) Slander of Title,[4] and (6) Punitive Damages as to all Defendants. For the reasons set forth below, the Court should dismiss all counts pertaining to BANA.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and

---

[4] It is unclear from the Amended Petition against which Defendants this claim is being asserted.

4

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted).   Conclusory statements are not accepted as true.   *Id.*   Bare assertions, along with unwarranted inferences, unreasonable conclusions, or arguments, should not be considered.   *See Ashcroft v. Iqbal*, 556 U.S. 662, 680-83 (2009).   "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."   *Ridge at Red Hawk, LLC v. Shneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).   Further, when considering a motion to dismiss, the Court is not required to accept the legal conclusions in a petition, as those are questions of law for the Court to decide.   *Iqbal*, 556 U.S. at 678 (citation omitted).

## ARGUMENT

I.   **THE COURT MUST DISMISS BARNARD'S BREACH OF CONTRACT CLAIM (COUNT I) AGAINST BANA BECAUSE BARNARD FAILS TO PLEAD THE REQUISITE ELEMENTS.**

Barnard's breach of contract claims against BANA fail because he alleges, without the factual predicate required by *Iqbal/Twombly*, that BANA breached two purported loan modifications: a 2011 "HAMP modification" and a 2014 oral "Fannie Mae loan modification." *See* Am. Pet., ¶¶ 34-35.

In order to state a plausible claim for breach of contract under Oklahoma law, Barnard must allege facts demonstrating "(1) the formation of a contract, (2) breach of the contract, and (3) damages as a result of that breach." *Cates v. Integris Health, Inc.*, 412 P.3d 98, 103 (Okla. 2018), *cert. denied*, 138 S. Ct. 2659 (2018); *see also McGregor v. Nat'l Steak Processors, Inc.*, No. 11-CV-0570-CVE-TLW, 2012 WL 2904547, at *3 (N.D. Okla. July 16, 2012).   For a valid and

enforceable contract to be formed, there must first be a meeting of the minds as to all material parts of the agreement. *See Barnes v. W. Express, Inc.*, No. CIV-14-574-R, 2015 WL 11237487, at *2 (W.D. Okla. Aug. 31, 2015) (citing *Watkins v. Grady County Soil and Water Conserv. Dist.*, 438 P.2d 491, 494 (Okla. 1968)); *Massey v. Matrix Serv. Co.*, No. 12-CV-546-GKF-PJC, 2013 WL 5603805, at *2 (N.D. Okla. Oct. 11, 2013).

First, with regard to the 2011 HAMP loan modification, the Amended Petition is contradictory: paragraph 13 states that "Barnard was never offered the permanent modification" but paragraph 34 then states that BANA "failed to honor the HAMP modification." Am Pet., ¶¶ 13, 34. However, based on judicially noticeable records, it is clear that BANA recorded the executed HAMP loan modification in the Land Records of Tulsa County. *See* **Exhibit 6**. Further, Barnard signed it on May 21, 2011. *Id.* at 8. The Modification also reflects the 2% interest rate that Barnard asserts should have been implemented. *See* Am. Pet., ¶ 12. Accordingly, it is clear that the HAMP loan modification ***was executed*** and bound the parties. However, Barnard's claim based on the HAMP modification fails because he does not allege that BANA breached any specific provision of the HAMP modification. *See Ruffin v. State Farm Fire & Cas. Co.*, No. CIV-14-1071-F, 2014 WL 12730326, at *1 (W.D. Okla. Dec. 16, 2014) (dismissing breach of contract claim where the plaintiff vaguely alleged a breach of the defendant's "obligations under the terms and conditions" of the contract); *see also Soseeah v. Sentry Ins.*, 808 F.3d 800, 810 (10th Cir. 2015) (reversing certification of class where the plaintiffs did not "identify a single contractual provision" in support of their breach of contract claim); *Morecraft v. Farmers Ins. Co.*, No. 09-CV-175-TCK-FHM, 2012 WL 1081178, at *10 (N.D. Okla. Mar. 30, 2012) (granting summary judgment where the plaintiff did "not identify a specific provision" that was breached). In fact, Barnard alleges that "BANA continued to accept the reduced payments pursuant to the TPP

6

through July 2013." *Id.*, ¶ 13.  Further, the HAMP loan modification reflects Barnard's monthly mortgage payment of $1,313.33 beginning on June 1, 2011 for a total of 60 months.  *Compare id.*, ¶ 12 *and* **Exhibit 6** at 4.  Accordingly, Barnard does not (and in fact, cannot) allege a breach of the 2011 HAMP loan modification.

Second, as to the purported "Fannie Mae loan modification," Barnard's concession that there was no written agreement is fatal to his breach of contract claim.  In Oklahoma, a verbal loan modification agreement is insufficient to alter the terms of an existing mortgage.  *See DCR Fund I, LLC v. TS Family Ltd. P'ship*, 261 F. App'x 139 (10th Cir. 2008) (holding that any agreement to accept deferred payment under the note would constitute a credit agreement under Okla. Stat. tit. 15, § 140 and, therefore, the agreement was required to be in writing); *Ramsey v. Bank of Oklahoma*, No. 08-CV-0239-CVE-SAJ, 2008 WL 4936316 (N.D. Okla. Nov. 17, 2008) (holding under Okla. Stat. tit. 15, § 140 any purported oral modification of defendant's duties under the loan was required to be in writing); *see also Dewberry v. Universal C.I.T. Credit Corp.*, 415 P.2d 978 (Ok. 1966) ("An oral agreement modifying a written contract, although established, is ineffective to alter the terms of the written contract until its terms have been fully executed.").  Here, Barnard fails to allege a written loan modification was ever executed.  In fact, Barnard concedes that his loan was purportedly modified during a telephone conversation in which a BANA "associate agreed to reduce the payments of $1,939.75 to $1,433.11 due to Barnard's new employment where he resided during the week in Oklahoma City for work and in the [sic] residence in Tulsa on weekends." Am. Pet., ¶ 17.  This allegation is insufficient to form a contract and, thus, is insufficient to state a claim for breach of contract as a matter of law.

Therefore, the Court must dismiss Barnard's breach of contract claims against BANA as to both the executed 2011 HAMP loan modification and the purported oral 2014 Fannie Mae loan modification.

## II.   THE COURT MUST DISMISS BARNARD'S CLAIM FOR "BAD FAITH CONDUCT" (COUNT II) AGAINST BANA BECAUSE THAT TORT DOES NOT EXTEND TO COMMERCIAL LOANS.

Barnard's claim for "bad faith conduct" against BANA must also be dismissed because Oklahoma courts have refused to extend so-called "bad faith" torts to the commercial lending context.

To establish a claim for "bad faith," Barnard must plead facts demonstrating a "special relationship" between himself and BANA.   *Hitch Enterprises, Inc. v. Cimarex Energy Co.*, 859 F. Supp. 2d 1249, 1263 (W.D. Okla. 2012) (citing *Embry v. Innovative Aftermarket Sys. L.P.*, 247 P.3d 1158, 1160)).  "Liability 'depends upon the existence of a "special relationship" . . . between the contracting parties that 'is marked by (1) a disparity in bargaining power where the weaker party has no choice of terms . . . and (2) the elimination of risk.'"   *Id.* (internal citation omitted). Tort claims premised on "bad faith" have been limited to insurance contracts.   *Id.*; *see also Chapman v. Chase Manhattan Mortg. Corp.*, No. 04-CV-0859-CVE-FHM, 2007 WL 2815246, at *8 (N.D. Okla. Sept. 24, 2007) (citing *RJB Gas Pipeline Co. v. Colorado Interstate Gas Co.*, 813 P.2d 1 (Okla. Civ. App. 1989).

Indeed, the Supreme Court of Oklahoma expressly declined to extend "bad faith" torts to commercial lending in *Rodgers v. Tecumseh Bank*, 756 P.2d 1223 (Okla. 1988).  There, the court held that a commercial loan is not "an adhesion contract," *i.e.*, a situation where a weaker party has no choice of terms, because borrowers have the ability to shop around and go to the lenders with the best rates.  *Id.*  The Court further held that while "the purpose of an insurance policy is elimination of risk," the "purpose of a commercial loan, on the other hand, is to provide the funds

to facilitate the taking of a business risk." *Id.* The Court concluded that "[t]o impose tort liability on a bank for every breach of contract would only serve to chill commercial transactions." *Id.* at 1227. Although *Rodgers* is a summary judgment case, numerous courts have applied *Rodgers* in dismissing tort claims premised on "bad faith" outside of the insurance context. *See Hitch Enterprises*, 859 F. Supp. 2d at 1263 (dismissing breach of implied duty of good faith and fair dealing and noting "[t]he Oklahoma Supreme Court has expressed . . . reluctance to extend tort recovery for bad faith beyond the insurance field.") (internal quotation omitted); *Warrenfeltz v. Hogan Assessment Sys., Inc.*, No. 17-CV-428-GKF-FHM, 2018 WL 1546559, at *3 (N.D. Okla. Mar. 29, 2018) (dismissing claim for breach of the implied covenant of good faith and fair dealing while noting "Oklahoma courts have declined to permit bad faith tort claims in the context of a variety of commercial contracts"); *McGregor v. Nat'l Steak Processors, Inc.*, No. 11-CV-0570-CVE-TLW, 2012 WL 314059, at *4 (N.D. Okla. Feb. 1, 2012) (dismissing bad faith claim and noting that "Oklahoma courts have found such a 'special relationship' in only very limited circumstances, most notably between an insurer and insured").

Here, Barnard's assertion that "Oklahoma recognizes the tort of breaching the covenant of good faith and fair dealing for Banks interactions with its customers" is flatly wrong, as demonstrated by the cases cited above. *See* Am. Pet., ¶ 39. In fact, both of the cases cited by Barnard in support of his erroneous statement expressly ***did not*** find a special relationship. *See* Am. Pet., ¶¶ 40-41. In *Beshara v. S. Nat. Bank*, *see* Am. Pet., ¶ 40, the court held that "Beshara neither avers nor points to any facts in the record which would support his theory that a special relationship existed between him and the Bank which would give rise to a fiduciary duty. Nor do we find that one appears to exist under the alleged facts. Consequently, the trial court did not err when it dismissed Beshara's claim for breach of fiduciary duty." 928 P.2d 280, 288-89 (Okla.

9

1996). Likewise, in *Hitch Enterprises*, *see* Am. Pet., ¶ 41, which is cited above, the court noted "[t]he Oklahoma Supreme Court has expressed [its] reluctance to extend tort recovery for bad faith beyond the insurance field," and dismissed the plaintiffs' bad faith tort claim. 859 F. Supp. 2d at 1263-64 (internal quotation omitted) (second alteration in original).

Barnard has not identified any law warranting extension of "bad faith" tort claims to the commercial lending context. Likewise, Barnard has not plead any facts sufficient to plausibly demonstrate that a special relationship existed between him and BANA. *See Hitch Enterprises*, 859 F. Supp. 2d at 1263. In fact, the Supreme Court of Oklahoma has expressly held that a commercial loan is not a contract of adhesion, unlike an insurance contract. *See Rodgers*, 756 P.2d at 1226; *see also id*. at 1226-27 (noting in the commercial lending context "that there is no special relationship, parties should be free to contract for any lawful purpose and upon such terms as they believe to be in their mutual interest"); *see also* Am. Pet., ¶¶ 42-44. Moreover, Barnard acknowledges that his loan modification did not concern the elimination of risk, which is required for a special relationship to exist. *See* Am. Pet., ¶ 45 ("As far as eliminating risk, the loan modification process presents no risk at all to BANA."). Accordingly, because Oklahoma has not extended "bad faith torts" beyond insurance contracts and no special relationship ever existed between Barnard and BANA, Barnard's claim for "Bad Faith Conduct" against BANA must be dismissed.

## III. THE COURT MUST DISMISS BARNARD'S ABUSE OF PROCESS CLAIM (COUNT III) AGAINST BANA BECAUSE BARNARD HAS FAILED TO ALLEGE FACTS THAT COULD SUPPORT SUCH A CLAIM.

The Court must also dismiss Barnard's claim for abuse of process against BANA because he has not alleged any facts demonstrating that the foreclosure proceeding was initiated by BANA ***primarily*** for an ***ulterior purpose***. *See* Am. Pet., ¶¶ 51-59.

To state a claim for abuse of process, Barnard must plead sufficient ***facts*** demonstrating "(1) the improper use of the court's process (2) primarily for an ulterior or improper purpose (3) with resulting damage to the plaintiff asserting the misuse." *McGinnity v. Kirk*, 362 P.3d 186, 203-04 (Okla. 2015). The Supreme Court of Oklahoma has added that "[f]or abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed and intended." *Id*. at 204. Moreover, "'***[i]f the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse***, even if the plaintiff had an ulterior motive in bringing the action or if he knowingly brought suit upon an unfounded claim.'" *Id*. (quoting *Hertz v. Luzenac Group*, 576 F.3d 1103, 1117 (10th Cir.2009)) (emphasis in original). The failure to plead facts demonstrating that the use of process was primarily for some ulterior purpose warrants dismissal of the claim. *See Meyers v. Kruger*, 759 F. Supp. 770, 774 (E.D. Okla. 1990), *aff'd*, 930 F.2d 34 (10th Cir. 1991) (dismissing claim where the plaintiffs failed to plead facts demonstrating use of process was for some "collateral purpose") (applying Oklahoma law).

For example, in *McGinnity v. Kirk*, the Kirks defaulted on their mortgage and the McGinnitys initiated a forcible entry and detainer proceeding as well as a foreclosure proceeding simultaneously. 362 P.3d at 203. The Kirks alleged that the McGinnitys' use of a "landlord/tenant remedy when a foreclosure proceeding was the property remedy" constituted an abuse of process. *Id*. The Supreme Court of Oklahoma rejected the Kirks' argument, and explained as follows:

> The McGinnitys used the forcible entry and detainer process for what that process was intended, for a person to try to gain possession of real property in accordance with that process. An abuse of process claim does not turn on whether the party bringing the claim was successful on the merits of the process that serves as the basis for the abuse of process claim. Similarly, abuse of process does not turn on whether a party is properly invoking the remedy of forcible entry and detainer under the circumstances, but rather whether the remedial process was invoked for a purpose other than what it was designed for. The Kirks' view of the meaning of

11

'improper use of the court's process' would make a lawyer's choice of a particular remedy an abuse-of-process claim if that choice was wrong, based upon the ultimate correctness of the remedy for the particular cause of action.  We reject this approach.

*Id*. at 204.

Here, as in *McGinnity*, Barnard's factual allegations are sparse, particularly with regard to the purpose behind the initiation of the Foreclosure Action.  Barnard asserts that the Foreclosure Action was initiated to "evoke a negative reaction from Barnard."[5]  Am. Pet., ¶ 58.  This vague and conclusory allegation, devoid of any factual support, fails to satisfy the pleading requirements necessary to survive the instant Motion.[6]  *See Twombly*, 550 U.S. at 555 (stating a plaintiff must "provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  Moreover, even if Barnard's entirely unsupported claim that the Foreclosure Action was initiated for an ulterior motive was sufficient, Barnard has not alleged any facts demonstrating the foreclosure was initiated primarily for this purpose.  *See Kruger*, 759 F. Supp. at 774.  Accordingly, Barnard's claim for abuse of process against BANA must be dismissed.

In addition, Barnard's abuse of process claim cannot be based on an alleged wrongful foreclosure where an actual foreclosure sale never occurs.  In *Malcom v. Wells Fargo Bank, N.A.*, No.  CIV-13-0754-HE,  2014  WL  5780712,  at  *3  (W.D.  Okla.  Nov.  5,  2014),  foreclosure

---

[5] Although the Foreclosure Action was initiated in BANA's name in June 2015, BANA did not direct its filing.  Indeed, the filing of the Foreclosure Action took place well after BANA had transferred the Mortgage to Fannie Mae, *see* **Exhibit 8**, and released servicing of the loan to Seterus, Am. Pet., ¶ 23.  However, for the purposes of this Motion only, BANA will not dispute Barnard's unsupported claim that BANA filed the Foreclosure Action.

[6] It is questionable whether this allegation satisfies the requirement of Rule 11(b) that by signing a pleading, the attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the factual contentions have evidentiary support . . . ." (Emphasis added.); *see also Salmon v. Nutra Pharma Corp.*, 687 Fed. Appx. 713, 718-19 (10th Cir. 2017) (affirming district court's grant of sanctions against plaintiff for the lack of an "objective evidentiary basis" for the complaint's allegations against Nutra Pharma Corporation).  Here, Barnard has not provided any factual basis to allege that "[t]he Respondents used [the foreclosure] to evoke a negative reaction from Barnard rather than seek any perceivable remedy."  Am. Pet., ¶ 58.

proceedings were initiated and a sheriff's sale was scheduled, but ultimately cancelled after the plaintiff and foreclosure counsel entered into a settlement agreement.  The plaintiff subsequently brought suit alleging, *inter alia*, a state law claim for "wrongful foreclosure."  *Id*. at *6.  In addressing this claim, the court stated that the plaintiff's "wrongful foreclosure" claim was "akin to a malicious prosecution action."  *Id*.  "To prevail on a malicious prosecution claim under Oklahoma law, a plaintiff must 'demonstrate: (i) the bringing of the action by the defendant, (ii) its successful termination in favor of the plaintiff, (iii) want of probable cause to bring the action, (iv) malice, and (v) damages.'"  *Id*. (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1286 (10th Cir.2004)).  The court granted summary judgment to Wells Fargo, explaining that "the foreclosure proceeding was not terminated in plaintiff's favor, but was dismissed without prejudice."  *Id*.  In other words, because Wells Fargo the foreclosure sale did not occur, the plaintiff could not maintain her "wrongful foreclosure" claim.  *Id*.

Although *Malcom* is a summary judgment case, it is applicable here because Barnard has failed to plead the elements required by *Malcom*.  First, Barnard himself admits that the foreclosure was not completed and that he received a loan modification from Seterus.  Am. Pet., ¶ 29.  Indeed, Barnard asserts that he is current on his loan with his new servicer, Caliber.  *Id*.  Second, Barnard does not, and cannot, allege that he was current on his mortgage payments when the Foreclosure Action was filed against him; accordingly, there was probable cause for the initiation of the Foreclosure Action.  Third, Barnard fails to plead any ***facts*** that the Foreclosure Action was brought maliciously.  Finally, since the foreclosure was not completed and Barnard received a loan modification, he cannot allege damages stemming from the initiation of the Foreclosure Action.  Thus, the Court must dismiss Barnard's claim for abuse of process against BANA.

IV. **THE COURT MUST DISMISS BARNARD'S FDCPA CLAIM AGAINST BANA BECAUSE BANA IS NOT A DEBT COLLECTOR AND THEREFORE NOT SUBJECT TO THE STATUTE.**

Barnard's claims under various provisions of the Fair Debt Collections Practices Act ("FDCPA") must be dismissed against BANA because Barnard does not, and cannot, allege BANA is a "debt collector" subject to the FDCPA.

In Count IV, Barnard asserts that BANA violated 15 U.S.C §§ 1692d, 1692e, and 1692f. *See* Am. Pet., ¶¶ 60-64. Each of these provisions prohibits certain actions by a "debt collector" as defined by the FDCPA. *See* 15 U.S.C. § 1692d ("A debt collector may not . . . ."); 15 U.S.C. § 1692e ("A debt collector may not . . . ."); 15 U.S.C. § 1692f ("A debt collector may not . . . ."); *see also* Am. Pet., ¶¶ 60-62. "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a; *see also Solomon v. HSBC Mortg. Corp.*, No. CIV-09-200-C, 2009 WL 2579803, at *1 (W.D. Okla. Aug. 18, 2009) ("Under the FDCPA a 'debt collector' is one who attempts to collect debts of another.").

In order for his FDCPA claim to survive the instant Motion, Barnard's Amended Petition must allege facts demonstrating BANA is a "debt collector," *i.e.*, (1) that BANA's principle business purpose is collection of debts owed to another; or (2) that BANA regularly collects or attempts to collects debts owed to another. *See* 15 U.S.C. § 1692a; *see also Risener v. Bank of Am. Corp.*, No. CIV-10-1110-R, 2011 WL 13101733, at *2 (W.D. Okla. Oct. 13, 2011) (emphasizing that a "debt collector" mean "any business *the principal purposes* of which is the collection of any debts, or who *regularly* collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another") (emphasis in original).

14

Without these specific allegations and accompanying factual support, a plaintiff's FDCPA claim automatically fails.  For example, in *Risener*, the District Court for the Western District of Oklahoma dismissed the plaintiffs' FDCPA claims where the plaintiffs' "alleged that Defendants were debt collectors under the Act, without alleging any of the facts required to establish that Defendants are debt collectors."  *Id.*; *see also Houck v. Local Fed. Sav. & Loan, Inc.*, 996 F.2d 311 (10th Cir. 1993) (affirming dismissal where, "[c]learly, the principal purpose of [the appellee bank] is not the collection of debts owed to another").

Here, Barnard alleges even less than the plaintiffs did in *Risener* – in fact, nothing at all – as to whether BANA is a "debt collector."  Indeed, Barnard does not allege facts demonstrating, that BANA is a "business the principal purposes of which is the collection of any debts" or that BANA "regularly collects or attempts to collect, directly or indirectly, debts." 15 U.S.C. § 1692a; *see* Am. Pet., ¶¶ 60-64.  Accordingly, Barnard's failure to plead any facts demonstrating BANA is a "debt collector" subject to the FDCPA warrants dismissal of Count IV.[7]  *See Scoles v. Spellings*, No. CIV-07-1007-M, 2008 WL 974702, at *3 (W.D. Okla. Apr. 8, 2008) (dismissing claim the plaintiff failed to plead facts demonstrating that the defendant's principle business purpose was not collecting debts of others, and the defendant did not regularly collect debts of others); *see also Braun v. Bank of Am.*, No. CV 17-72-BU-BMM-JCL, 2017 WL 6806790, at *4 (D. Mont. Nov. 30, 2017), *report and recommendation adopted*, No. CV 17-72-BU-BMM, 2018 WL 298550 (D. Mont. Jan. 4, 2018), *appeal dismissed*, No. 18-35016, 2018 WL 1704219 (9th Cir. Mar. 15, 2018) (dismissing FDCPA claims against BANA where complaint did "not allege that debt collection is Bank of America's principal business purpose").

---

[7] Indeed, BANA is a national banking association, a far cry from the types of entities normally covered by the FDCPA, like "collection agencies, lawyers who collect debts on a regular basis, and companies that buy delinquent debts and then try to collect them." *See* "Debt Collection," Federal Trade Commission, https://www.consumer.ftc.gov/articles/pdf-0036-debt-collection.pdf (last visited August 15, 2018).

Further, BANA does not even qualify as a debt collector under the FDCPA for an additional reason; it was the servicer of Barnard's loan prior to default.  In *Obduskey v. Wells Fargo*, the appellant alleged that Wells Fargo was a debt collector even though it was the servicer of the loan at issue prior to default.  In affirming the district court's dismissal of the appellant's FDCPA claim, the Tenth Circuit held that "Wells Fargo began servicing the loan before he went into default and that it continued to do so after he defaulted.  Therefore, Wells Fargo is not a 'debt collector' under the FDCPA."  879 F.3d 1216, 1219 (10th Cir.), *cert. granted sub nom. Obduskey v. McCarthy & Holthus LLP*, 138 S. Ct. 2710 (2018) (internal citation omitted); *see also Ladouceur v. Wells Fargo*, 682 F. App'x 649, 652 (10th Cir. 2017) (affirming dismissal of FDCPA claim because Wells Fargo was the servicer of the loan prior to default).

Here, the publicly available land records establish that BANA was the servicer of Barnard's Mortgage prior to default and, therefore, does not satisfy the definition of "debt collector" under the FDCPA.  Indeed, BANA was the servicer of the Mortgage in May 2011 when Barnard executed the HAMP modification.  *See* **Exhibit 6**; *see also* Am. Pet., ¶ 11 (noting that BANA worked with Barnard as early as 2010 to help him obtain a loan modification).  BANA remained the servicer of the Mortgage during Barnard's default period beginning in January 2013, and continued as servicer up until April 18, 2015, when the Mortgage was assigned to Fannie Mae.  *See* **Exhibit 7**; **Exhibit 8**.  Therefore, BANA does not qualify as a debt collector under the FDCPA.

Finally, even if BANA did qualify as a debt collector, Barnard fails to allege facts demonstrating BANA that was attempting to collect a debt through its alleged conduct including the Foreclosure Action.  *See* 15 U.S.C. §§ 1692d, 1692e, 1692f.  First, courts throughout the country have held that foreclosure actions do not constitute debt collection, but rather enforcement of a security interest, which is not subject to the FDCPA.  *See, e.g.*, *Warren v. Countrywide Home*

*Loans, Inc.*, 342 F. App'x 458, 460 (11th Cir. 2009); *Kaltenbach v. Richards*, 464 F.3d 524, 528 (5th Cir. 2006); *but see McDaniel v. S. & Assocs., P.C.*, 325 F. Supp. 2d 1210, 1218 (D. Kan. 2004). Second, Barnard does not allege that BANA initiated the Foreclosure Action, but rather asserts that **Seterus** and **Baer Timberlake** initiated the Foreclosure Action, but, for a reason which Barnard does not explain, represented that BANA was "the proper party to assert a claim for foreclosure." Am. Pet., ¶ 28. In sum, Barnard does not allege BANA was attempting to collect a debt and, for this additional reason, Barnard's FDCPA claims must be dismissed.

**V.     COUNT V, SLANDER OF TITLE, MUST BE DISMISSED AS TO BANA BECAUSE THE FILING OF THE *LIS PENDENS* WAS ABSOLUTELY PRIVILEGED.**

Barnard's claim for slander of title, spanning a total of four paragraphs, is premised on the filing of a *lis pendens* by Baer Timberlake allegedly on behalf of BANA following the initiation of the Foreclosure Action. *See* Am. Pet., ¶¶ 65-68. However, Count V must be dismissed because the filing of the *lis pendens* was absolutely privileged, and cannot serve as the basis for Barnard's slander of title claim. Furthermore, Barnard has failed to plead sufficient facts to satisfy the elements of slander of title and has not alleged a plausible claim against BANA.

To state claim for slander of title under Oklahoma law, Barnard must plead sufficient facts demonstrating the following elements: "1) publication; 2) a false statement in the publication; 3) malice in the publication; 4) special damage resulting from the publication; and 5) ownership or possession of the property that is the subject of the publication." *Monroe v. Bank of Am. Corp.*, No. 17-CV-248-JED-JFJ, 2018 WL 1875294, at *1 (N.D. Okla. Apr. 19, 2018) (citing *Grasz v. Discover Bank ex rel. SA Discover Fin. Servs., Inc.*, 315 P.3d 406, 409 (Okla. Civ. App. 2013)). "An assertion that the publication was privileged is a defense to a charge of slander of title." *Borison v. Bank Leumi Tr. Co. of New York*, 972 P.2d 1188, 1190 (Okla. Civ. App. 1998).

This Court has previously held that statements in relation to foreclosure proceedings, like any other judicial proceeding, are absolutely privileged and cannot served as a basis for a slander of title claim.  For example, in *Monroe v. Bank of Am. Corp.*, the plaintiffs alleged that BANA engaged in an "'untenable' foreclosure action" and refused to release the plaintiffs' mortgage. 2018 WL 1875294, at *1.  In dismissing the plaintiffs' complaint, this Court held that participation in the foreclosure proceedings was absolutely privileged.  *See id.* at 2 (explaining "Statements made in judicial pleadings are absolutely privileged.") (internal quotation omitted); *see also Borison*, 972 P.2d at 1190 (holding the filing of a judgment was an absolutely privileged statement).

Likewise, Oklahoma's courts have held that the filing of a *lis pendens* is a privileged statement.  In *Scott-Kinnear, Inc. v. Eberly & Meade, Inc.*, the appellant alleged the filing of a *lis pendens* constituted slander of title. 879 P.2d 838, 839 (Okla. Civ. App. 1994).  In affirming dismissal of the slander of title claim, the court explained that "'[t]he publication of the pleadings is unquestionably clothed with absolute privilege, and we have concluded that the republication thereof by recording a notice of *lis pendens* is similarly privileged.'"  *Id.* at 840 (quoting *Albertson v. Raboff*, 295 P.2d 405, 408 (Cal. 1956)).  The court concluded that, because the *lis pendens* was a "fair statement of the issues" in the litigation, "speaking of the contents of that lawsuit did not slander the title[.]"  *Id.* at 841; *see also Morford v. Eberly & Meade, Inc.*, 879 P.2d 841, 843 (Okla. Civ. App. 1994) (affirming dismissal of slander of title claim premised on filing of *lis pendens*).

According to Plaintiff's Amended Petition, the Foreclosure Action was initiated by on June 8, 2015, and "Baer Timberlake on behalf of BANA filed a *lis pendens* contemporaneous to the filing of this sham foreclosure in the land records."  *See* Am. Pet., ¶ 25.  The filing of the *lis pendens* in relation to the Foreclosure Action was, thus, absolutely privileged and cannot served

as the basis for Barnard's slander of title claim. *See Scott-Kinnear*, 879 P.2d at 840; *Morford*, 879 P.2d at 843.

However, even if the filing of the *lis pendens* by Baer Timberlake was not absolutely privileged (which it was), Barnard has not alleged facts which could plausibly establish the elements of slander of title, namely, a false statement or malice. Where a *lis pendens* fairly states the issues of the lawsuit to which it is related, it does not constitute a "false statement" sufficient to maintain a claim for slander of title. *See Scott-Kinnear*, 879 P.2d at 840 (affirming dismissal of slander of title claim where *lis pendens* "fairly stated the issues of the lawsuit to which it related"). Barnard does not allege any facts suggesting that the *lis pendens* did not fairly state that a foreclosure proceeding had been initiated on the Property. *Id*. Indeed, the *lis pendens* accurately reflects that a lawsuit was filed in relation to the Property. *See Lis Pendens* dated June 11, 2015, a true and correct copy of which is attached hereto as **Exhibit 9**. Moreover, Barnard must plead sufficient facts demonstrating "a lack of good faith and want of probable cause" on the part of BANA in order to plead malice in the context of slander of title. *Voiles v. Santa Fe Minerals, Inc.*, 911 P.2d 1205, 1209 (Okla. 1996); *see also Scott-Kinnear*, 879 P.2d at 840 (affirming dismissal where the plaintiffs failed to provide any basis for malice). Barnard does not, and cannot, allege that he was current on his mortgage payments when the Foreclosure Action was filed, therefore, probable cause existed for the initiation of the Foreclosure Action. Accordingly, Barnard's claim for slander of title against BANA must be dismissed for these additional reasons.

## VI.    COUNT VI, "PUNITIVE DAMAGES," MUST BE DISMISSED AS TO BANA BECAUSE IT IS NOT AN INDEPENDENT CAUSE OF ACTION.

Finally, Barnard's purported claim for "Punitive Damages" must be dismissed because it is not an independent cause of action recognized under Oklahoma law. *See Kruse v. Travelers Home & Marine Ins. Co.*, No. 15-CV-0444-CVE-FHM, 2015 WL 5599931, at *2 (N.D. Okla.

Sept. 22, 2015) (dismissing independent cause of action for punitive damages because "claim for punitive damages is not an independent cause of action, but depends upon the existence of a separate claim"); *Pinson v. Equifax Credit Info. Servs., Inc.*, No. 06-CV-162-GKF-SAJ, 2008 WL 906241, at *4 (N.D. Okla. Mar. 31, 2008), *aff'd*, 316 F. App'x 744 (10th Cir. 2009) (dismissing independent claim for punitive damages); *see also Powell v. Express Credit Auto, Inc.*, No. CIV-14-1167-R, 2015 WL 1642137, at *3 (W.D. Okla. Apr. 13, 2015) (dismissing independent claim for punitive damages).

In addition, Barnard fails to plead the requisite elements required to support a punitive damages award; to wit, that BANA acted recklessly or with malicious intent.  *See Raymond v. Air Evac EMS, Inc.*, No. 14-CV-0680-CVE-PJC, 2015 WL 1738026, at *4 (N.D. Okla. Apr. 16, 2015); *see also* Am. Pet. ¶ 69.  In *Raymond*, the plaintiff alleged that the "'Defendant acted intentionally, maliciously and in reckless disregard for the rights of Plaintiff'" and that "this conduct was 'with full knowledge, in that Defendant knew, or should have known, of the severe adverse consequences of their [sic] actions upon [p]laintiff and others.'"  *Id*. at *3 (alteration in original). The Court struck the plaintiff's request for punitive damages, explaining that although the plaintiff's statements "track the language of Oklahoma's punitive damages statute," they did not "sufficiently identify what allegedly negligent act was undertaken with the requisite recklessness or malicious intent."  *Id*. at *4.

Here, as in *Raymond*, Barnard's request for punitive damages consists of one conclusory paragraph which is virtually identical to the allegations made by the plaintiff in Raymond. *Compare id*. at *4 *with* Am. Pet. ¶ 69.  Barnard does not allege what specific tortious acts were

undertaken by BANA with recklessness or malicious intent, therefore, his purported claim for "Punitive Damages" must be dismissed as to BANA.[8]

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Defendant Bank of America, N.A. respectfully requests that Defendant/Counter-Plaintiff Thomas Edward Barnard's Amended Counterclaim and Third-Party Petition be dismissed with prejudice, and award Bank of America, N.A. any further relief that the Court deems appropriate.

Dated:    August 22, 2018                              Respectfully submitted,

                                                       /s/ Brian Rayment
                                                       Brian J. Rayment (Fed. Bar #7441)
                                                       **KIVELL, RAYMENT AND FRANCIS**
                                                       Triad Center I, Suite 550
                                                       7666 East 61st Street
                                                       Tulsa, Oklahoma 74133
                                                       Telephone: (918) 254-0626
                                                       Facsimile: (918) 254-7048
                                                       E-mail: brayment@kivell.com

                                                       ***Counsel for Defendant Bank of America, N.A.***

---

[8] In addition, punitive damages "are not recoverable solely for breach of contract obligations." *Wilspec Techs., Inc. v. Dunan Holding Grp.*, Co., 204 P.3d 69, 74 (Okla. 2009). As explained above, Barnard's tort claims – "Bad Faith Conduct" and Slander of Title – fail as a matter of law. Accordingly, no tort claim exists on which to premise an award of punitive damages.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 23, 2018, a copy of the foregoing Defendant Bank of America, N.A.'s Memoranda of Law in Support of Motion to Dismiss Amended Counterclaim and Third Party Petition was filed and served via the Court's CM/ECF system on all counsel of record and via first class mail on the following counsel who have not yet appeared on CM/ECF:

> Edward G. Lindsey, Esquire
> **THE LINDSEY LAW FIRM PC**
> 427 S. Boston Avenue, Suite 922
> Tulsa, OK 74103
> edwardlindsey@hotmail.com
>
> ***Counsel for Defendant and Third-Party Plaintiff***
> ***Thomas Edward Barnard***

> */s/ Brian J. Rayment*
> Brian J. Rayment

22